In re Malcolm E. DUNCAN and Genita P. Duncan, Debtors.

In re Marion GEORGE, d/b/a Marion George Janitorial, Debtor.

Bankruptcy Nos. 3–83–00161, 3–83–00216.

United States Bankruptcy Court, D. Alaska.

Aug. 10, 1984.

M. Jane Pettigrew of Yerbich & Stanley, Anchorage, Alaska, for Malcolm E. Duncan and Genita P. Duncan.

Patricia R. Hefferan of Noel H. Kopperud, P.C., Wasilla, Alaska, for Carney Bros. Const. Co.

Jan Samuel Ostrovsky and Mary Ellen Beardsley of Campbell, Ostrovsky & Thwaites, Anchorage, Alaska, for Marion George, d/b/a Marion George Janitorial.

Albert D. Patterson, Anchorage, Alaska, for Edwin A. and Judy McEdwards.

### OPINION

J. DOUGLAS WILLIAMS, II, Bankruptcy Judge.

The matter before the Court in each of these cases is whether, and to what extent, a judicial lien may be avoided pursuant to § 522(f) of the Bankruptcy Code ("Code")[1] when there are liens junior to the judicial lien which are not avoidable, and where a failure to avoid the judicial lien will result in the debtor not receiving the full amount of the homestead exemption claimed. The debtors in each case are claiming that the judicial liens impair the debtors' homestead exemptions.

In *Duncan*, the debtors are seeking to avoid several judicial liens, including that of the Matanuska-Susitna Borough for the use and benefit of Carney Brothers Construction Company ("Carney Brothers"). The Carney Brothers' lien has priority over a second deed of trust and several tax liens filed by the Internal Revenue Service in such amounts that the Duncans will not receive the amount of their homestead exemption if the Carney Brothers' lien is not avoided.

In *George*, the debtor is seeking to avoid all but a small portion of a judicial lien held by Edwin and Judy McEdwards ("McEdwards"). The McEdwards' lien is senior to a tax lien filed by the Internal Revenue Service. Without avoidance of the McEdwards' lien, George will receive only $3,025.75 of her homestead exemption.

For the reasons hereinafter set forth, the Court holds that the Carney Brothers' lien does not impair the Duncans' homestead exemption and cannot be avoided under § 522(f), and that the McEdwards' lien impairs George's homestead exemption to the extent of $12,062.97, and will be avoided in that amount.

### FACTS

### DUNCAN

Malcolm and Genita Duncan filed their Chapter 7 petition on September 15, 1983. In the schedules filed September 29, 1983, the Duncans claimed a $27,000.00 homestead under Alaska law.[2] On the date the petition was filed, the Duncans owned a residence with a fair market value of $160,000.00, subject to the following encumbrances:

---

1. 11 U.S.C. § 101 *et seq.*

2. AS 09.38.010 provides in pertinent part:
   (a) An individual is entitled to an exemption as a homestead of the individual's interest in property in this state used as the principal residence of that individual or the dependents of that individual, but the value of the homestead exemption may not exceed $27,-000.
   (b) If property owned by the entirety or in common is used by one or more individual owners or their dependents as their principal residence, each owner is entitled to a homestead exemption of that owner's interest in the property as provided in (a) of this section. The aggregate value of multiple homestead exemptions allowable with respect to a single living unit may not exceed $27,000. If there are multiple owners of property exempt as a homestead, the value of the exemption of each individual owner may not exceed that individual owner's pro rata portion of $27,000.

| Creditor | Type of Lien | Approximate Amount | Date Recorded |
|---|---|---|---|
| 1. Lomas & Nettleton Company | Deed of Trust | $ 92,000.00 | October 24, 1977 |
| 2. Matanuska-Susitna Borough for the use and benefit of Carney Brothers Construction Company | Judicial | 14,662.00 | February 26, 1982 |
| 3. Household Finance Corp. | Deed of Trust | 3,900.00 | April 8, 1982 |
| 4. Internal Revenue Service | Tax Liens | 56,014.00 | April 22, 1982 and June 16, 1983 [3] |
| 5. Chevron U.S.A., Inc. | Judicial | 1,198.00 | July 13, 1983 |
| 6. C.A. Smith, Inc. | Judicial | 2,118.00 | August 25, 1983 |
| | Total | $169,892.00 | |

The Duncans filed a motion to avoid the judicial liens of Carney Brothers, Chevron U.S.A., Inc., and C.A. Smith, Inc., on the theory that the total of the amounts owed on the liens which are not avoidable, consisting of the first and second deeds of trust and the tax liens, and the $27,000.00 homestead exemption exceed the fair market value of the property, and accordingly the judicial liens must be avoided under § 522(f) as they impair the homestead exemption. Neither Chevron, U.S.A., Inc. nor C.A. Smith, Inc. filed an objection to the debtors' motion. Pursuant to the waiver provisions contained in Local Bankruptcy Rule 4B(4) the liens of Chevron, U.S.A., Inc. and C.A. Smith, Inc. will be avoided pursuant to § 522(f).[4]

Carney Brothers objected to the Duncans' motion, contending that the lien of Carney Brothers is subordinate only to that of the first deed of trust holder and that to allow avoidance of the Carney Brothers' lien would be inconsistent with the distribution provisions contained in § 724(b). Carney Brothers further argue that the impairment of the Duncans' homestead exemption is due not to the Carney Brothers' lien, but to the tax liens which are junior to the Carney Brothers' lien.

## GEORGE

Marion George, d/b/a Marion George Janitorial, filed a Chapter 7 petition and the schedules and statement of affairs on December 15, 1983. A $27,000.00 homestead exemption was claimed under Alaska law.[5] On the date the petition was filed, George owned a residence with a fair market value

3. The Duncans submitted in one of their briefs that tax liens in the amount of $27,800.00 have priority over the Carney Brothers' lien. However, their position is not supported by either the title report on the property or the proof of claim filed by the Internal Revenue Service. The tax liens totaling $56,014.00 were filed on April 22, 1982 and June 16, 1983.

4. Local Bankruptcy Rule 4B(4) provides that the failure to file a brief or objection by the adverse party shall be deemed an admission that the motion is well taken. Neither Chevron, U.S.A., Inc. nor C.A. Smith, Inc. filed a claim in the debtors' Chapter 7 proceeding. Because the value of the property is exhausted by the federal tax liens filed prior to the liens of Chevron, U.S.A., Inc. and C.A. Smith, Inc., as detailed at pages 838–839, *infra*, the proper procedure for the debtors to have followed would have been to file claims (under the authority of § 501(c) and Bankruptcy Rule 3004) on behalf of Chevron, U.S.A., Inc. and C.A. Smith, Inc. Pursuant to § 506(d) and Bankruptcy Rule 3012 or 7001, a motion or complaint, as appropriate, could have then been filed by the debtors to avoid the liens as being unsecured claims under § 506(a), since the value of the claims exceeds the estate's interest in the property. The end result reached in avoiding the liens pursuant to § 522(f) is the same as that which would be reached if the debtors were required to file proofs of claim and proceed under § 506. Therefore, the debtors' motion under § 522(f) will be granted as Chevron, U.S.A., Inc. and C.A. Smith, Inc. failed to object and no other party will be prejudiced.

5. See footnote 2, supra.

of $67,000.00. The property is encumbered with the following liens:

| | Creditor | Type of Lien | Approximate Amount | Date Recorded |
|---|---|---|---|---|
| 1. | Alaska Teamsters Federal Credit Union | Deed of Trust | $17,053.07 | June 16, 1977 |
| 2. | Internal Revenue Service | Tax Lien | 10,761.71 | March 5, 1981 |
| 3. | Edwin and Judy McEdwards | Judicial | 24,248.19 | March 19, 1982 |
| 4. | Internal Revenue Service | Tax Lien | 11,911.28 | May 17, 1982 [6] |
| | | Total | $63,974.25 | |

George filed a motion to avoid the McEdwards' judicial lien as the liens which are not avoidable total $39,726.06 and the property is valued at $67,000.00. When the liens which are not avoidable and the $27,000.00 homestead exemption are added together and subtracted from the fair market value, the remaining value of the residence is $273.94. George contends that all of the McEdwards' lien except the $273.94 [7] must be avoided. George asserts that if the lien is not avoided and is instead allowed to remain on the property, she will be prevented from receiving her full homestead exemption.

## LAW

■ Section 522(f) provides in pertinent part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) a judicial lien....

Avoidance of a judicial lien under § 522(f) is a two-step procedure. First, it must be determined if the debtors have an exemption, here a homestead exemption, which is impaired. Second, it must be determined the extent to which the judicial lien creates that impairment. The analysis begins with the value of the property claimed as exempt as of the filing date of the petition. *In re Tarrant*, 19 B.R. 360, 9 B.C.D. 413, CCH Bkr.L.Rptr. ¶ 68747 (Bkrtcy.Alaska 1982).

An easier situation to analyze than that of the instant cases is that presented in *In re Boteler*, 5 B.R. 408, 6 B.C.D. 798 (Bkrtcy.S.D.Ala.1980), in which the property the debtor claimed as being exempt was encumbered by a mortgage, a judicial lien and a second mortgage in that order of priority. Because the two mortgages had a total balance in excess of the fair market value of the property, the court held the debtor had no exemptible interest, and the judicial lien could not be avoided as there could be no impairment where there was no exemption. The court did not mention the issue presented by the judicial lien being prior to the second mortgage. In both the *Duncan* and *George* cases, the non-judicial liens do not exceed the value of the property.

6. In the stipulation filed by George and the McEdwards detailing the fair market value of the property and the amounts and priority of the liens it is noted that the Internal Revenue Service has two unsecured claims in the total amount of $19,462.04. These claims are irrelevant for purposes of George's § 522(f) motion because they are unsecured, and do not involve liens encumbering the property.

7. The proposed order lodged with the Court would have avoided all but $554.62 of the McEdwards' lien. The difference between the Court's calculation and that of George is presumably due to a difference between the values as stipulated and those originally used by George as reflected in the Response to Opposition to Motion to Avoid Lien.

The next step to consider is presented in *In re Tarrant, supra,* in which the property for which an exemption was claimed was encumbered by two deeds of trust and two judicial liens, the senior judicial lien being held by Spenard Builders Supply, Inc. Although the opinion does not note the priority as to the deeds of trust and the judicial liens, the Court's file reflects that the deeds of trust were recorded prior to Spenard's lien and that of the second judicial lienholder. Spenard argued that the debtors were not entitled to a homestead exemption because the total of the deeds of trust and the judicial liens exceeded the fair market value, attempting to apply the rationale in *Boteler, supra.* Spenard's reasoning was rejected since, unlike the situation in *Boteler,* the liens which were not avoidable in *Tarrant* did not exceed the value of the property. Accordingly, the debtors in *Tarrant* were entitled to a homestead exemption. Thus, the first requirement of § 522(f) was met in *Tarrant,* as the debtors were entitled to a homestead exemption which was impaired by the encumbrances on the property.

In *Tarrant* the next step in the analysis was then reached as consideration was given as to what extent the judicial lien of Spenard impaired the homestead exemption, with the focus being on the fact that the sum of the deeds of trust and the homestead exemption exceeded the fair market value of the property. Because the homestead exemption exhausted the value in excess of the deed of trust liens which could not be avoided, the Spenard judicial lien was fully avoided. In a footnote, it was pointed out that if the value of the property exceeds the amount of the exemption, the judicial lien will remain fixed on the excess. *In re Tarrant, supra* at 366–367 n. 8.

It has been argued in *Duncan* that the Court's reasoning in *Tarrant* means that the Carney Brothers' lien must be avoided in full because the sum of the liens which are not avoidable and the homestead exemption is $178,914.00 which far exceeds the fair market value of $160,000.00. In *George,* the same reasoning is used to argue that most of the McEdwards' lien should be avoided, as the sum of the liens which are not avoidable and the homestead exemption is $66,726.06 as compared to the fair market value of $67,000.00. Debtors' argument fails to consider that the Court in *Tarrant* was not faced with the situation where the judicial lien sought to be avoided was prior to a lien which is not avoidable. Moreover, debtors' reasoning is inconsistent with the language of § 522(f) which states that a judicial lien may be avoided to the *"extent that such lien impairs an exemption...."* (Emphasis added).

■ In order to determine the extent to which a lien impairs an exemption, the priority of the lien for which avoidance is being sought must be considered, as the court recognized *In re Hoffman,* 28 B.R. 503 (Bkrtcy.Md.1983). The property in *Hoffman* was subject to a federal tax lien and three judicial liens, in that order of priority. The debtors claimed an exemption under § 522(d)(1) and (d)(5) of $15,800.00. The court held that to the extent that the two junior liens exceeded the fund generated by sale of the property, they were unsecured and therefore not liens. The senior judicial lien, junior only to the federal tax lien, impaired the debtors' exemption to the extent of $15,800.00, and was accordingly the only lien subject to being avoided under § 522, to the extent of the exemption. The court then noted that its analysis:

> presupposes the avoidance of liens in the order of their priority, and for good reason. This Court has found no authority, nor have the parties cited any, for the proposition that liens are to be avoided in any other fashion. Section 724(b) ... supports the proposition by implication and both state and federal courts ... have recognized the superiority of liens prior in time over later ones.

*Id.* at 508.

The priority of the liens involved was also considered by Judge Norton in the cases of *In re Register,* 37 B.R. 708 (Bkrtcy.N.D.Ga.1983) and *In re Orsburn,*

35 B.R. 217 (Bkrtcy.N.D.Ga.1983). In *Register*, the debtors requested that a judgment lien recorded prior to the debtor's first and second purchase money mortgages and third non-purchase money mortgage be avoided to allow debtors to take their homestead exemption under Georgia law. The court pointed out that priority is generally determined by the date of recordation, with the oldest liens having priority. Georgia law, however, provides an exception to the general rule, and gives purchase money mortgages a special priority. Accordingly, the debtors' first and second mortgages as purchase money mortgages had priority over the judicial lien for which avoidance was sought, but the third mortgage was junior to the judicial lien. The court then subtracted from the value of the residence the first and second mortgages and the judgment lien. The remaining value in the residence was $12,695.77, sufficient for the claimed homestead exemption of $10,-800.00. It was then noted that the calculation did not take into account the third mortgage, which was last in priority. When the third mortgage was deducted from the $12,695.77 remaining, there was insufficient value in the property for the debtors to receive their full homestead exemption. Based on its calculation, the court concluded that it was the third mortgage and not the judicial lien that impaired the debtors' exemption.

A similar result was reached in *Orsburn, supra,* in which the debtors' residence was encumbered by a first and second mortgage, a judicial lien and a deed of trust, in that order of priority. Deducting the mortgages and the judicial lien from the value of the residence left more than seven times the amount needed for the debtors' exemption. It was the deed of trust which encumbered the equity remaining after the mortgages and judicial lien.

■ Thus, in order to analyze whether the judicial liens impair the debtors' homesteads, and to what extent, if any, the priority of the liens encumbering the property must be considered. It is not possible to do as the debtors suggest and pull the Carney Brothers' and McEdwards' liens out of the ranking of the liens and avoid these judicial liens pursuant to § 522(f) while leaving liens attaching to the property which are junior but cannot be avoided. The judicial liens can be avoided only if they impair the debtors' homestead exemptions while still occupying their position of priority among the liens on the subject properties.

To determine whether there is such an impairment, the following steps should be taken:

1. Rank all liens in order of priority (and equity, if any) to the extent of the value of the property. (Any liens or portion of a lien in excess of the value of the property will be an unsecured claim under § 506.)

2. Subtract the gross amount of the homestead exemption provided by law from the value of the property.

3. From the remainder left from step two, subtract each lien, one at a time, beginning with the most senior lien, as ranked in step one, until the judicial lien is reached. Then subtract the judicial lien. To the extent that all or any portion of a judicial lien exceeds the remainder derived from step two (i.e., is not part of the remainder), it is voidable as it impairs the exemption.

In *Duncan*, the formula given above works to show the Carney Brothers' judicial lien does not impair the Duncans' homestead exemption. The steps outlined above are applied as follows:

1. The liens in order of priority, as stated at page 835, *supra,* are (to the extent of the value of the property):

| | |
|---|---:|
| First Deed of Trust | $92,000 |
| Carney Brothers' Judicial Lien | 14,662 |
| Second Deed of Trust | 3,900 |
| Tax Liens (to the extent secured) | 49,438 |
| | $160,000 |

2. The fair market value of the property, as stipulated by the parties and as previously noted, is *$160,000.* The homestead claimed is $27,000.

$160,000   value of property
 –27,000   homestead exemption
$133,000   remainder

3.   $133,000   remainder from step 2
     –92,000   less:  first deed of trust from
                      step 1

      41,000
     –14,662   less:  Carney Brothers' judicial
                      lien from step 1
     $26,338

■ The only lien senior to the Carney Brothers' judicial lien is the first deed of trust, with a balance of $92,000.00. Absent the Carney Brothers' judicial lien and all liens junior to it, there would be more than sufficient value in the property for the Duncans to receive their homestead exemption. Subtracting the Carney Brothers' judicial lien of $14,662.00 from the remainder left from the first deed of trust, however, does not change that result. It is only when the federal tax liens are subtracted from the remainder left after deducting the first deed of trust, the Carney Brothers' judicial lien, and the second deed of trust, that there is insufficient value in the property to support a $27,000.00 homestead exemption:

$26,338   remainder from step 3
 –3,900   less:  second deed of trust from
                 step 1

 22,438
–56,014   less:  full amount of tax liens from
                 step 1
$(33,576)

Although the Duncans' homestead exemption is impaired, it is not the Carney Brothers' judicial lien which creates that impairment. The requirements of § 522(f) have not been met, and the Carney Brothers' judicial lien may not be avoided.

■ In *George*, the analysis shows an impairment of George's homestead exemption, and so the McEdwards' judicial lien may be avoided in part, although not to the extent urged by George:

1.   The liens in order of priority, as stated at page 836, *supra*, are (to the extent of the value of the property):

| | |
|---|---|
| Deed of Trust | $17,053.07 |
| Tax Lien | 10,761.71 |
| McEdwards' Judicial Lien | 24,248.19 |

| | |
|---|---|
| Tax Lien | 11,911.28 |
| Equity | 3,025.75 |
| | $67,000.00 |

2.   As outlined earlier, the fair market value of the property is $67,000.00, and the homestead claimed is $27,000.00.

$67,000.00   value of property
–27,000.00   homestead exemption
$40,000.00   remainder

3.   $40,000.00   remainder from step 2
    –17,053.07   less:  deed of trust from
                        step 1

     22,946.93
    –10,761.71   less:  tax lien from step 1
     12,185.22
    –24,248.19   less:  McEdwards' judicial
                        lien from step 1
     (12,062.97)

The McEdwards' judicial lien exceeds the remainder by $12,062.97 and therefore the McEdwards' judicial lien must be avoided to that extent. George will not actually receive the full $27,000.00 homestead exemption, however, as the exemption will still be subject to the tax lien junior to the McEdwards' lien in the amount of $11,911.28 which is not avoidable.

For the Court to hold otherwise than above would turn § 522(f) from a provision allowing for avoidance of a judicial lien to one creating subordination of a judicial lien in some circumstances. By way of illustration, assume a debtor owns a piece of property with a fair market value of $100,000.00, encumbered by a first deed of trust with a $50,000.00 balance, a judicial lien of $20,000.00, and a second deed of trust with a $30,000.00 balance, in that order of priority. The debtor has claimed a $10,000.00 homestead exemption. If the reasoning of the debtors was followed, the liens which are not avoidable and the homestead exemption would be added together for a total of $90,000.00, leaving an excess of $10,000.00 to which the judicial lien would attach. The result of the reasoning would be to allow the second deed of trust holder payment in full, while the judicial lien, senior to the second deed of trust, would be secured for only half of the debt owed to the judicial lienholder. Congress cannot

have intended § 522(f) to have such a result.[8]

Accordingly, the Court finds in *Duncan* that the lien of Carney Brothers does not impair the debtors' exemption and cannot be avoided. The liens of Chevron U.S.A., Inc. and C.A. Smith, Inc. are avoided pursuant to § 522(f).[9] In *George*, the Court finds that the lien of the McEdwards impairs the debtor's homestead to the extent of $12,062.97, and will be avoided in that amount. Orders will be entered in conformance with this opinion.

---

8. In discussing § 522(f), the House noted that "The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien...." H.Rep. No. 95–595, 75th Cong. 1st Sess. 362 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787. In the context of the instant case it is helpful to read § 522(f) in conjunction with § 724(b). Section 724(b) provides that proceeds from the property subject to a tax lien which is not avoidable will be subordinated to priority claims under § 507(a), other than unsecured claims of governmental units. Pursuant to § 724(b)(1) the priority of liens which are senior to the tax lien and which are not avoidable remains unaffected. If the debtors' method of avoiding a judicial lien pursuant to § 522(f) is used, to the extent the judicial lien is not avoidable, the judicial lien becomes subordinated to junior liens, which could include tax liens. The subordination of a part of the judicial lien would then create a result inconsistent with the provisions of § 724(b) which preserves the priority of senior liens. Although the subordination which the Court rejects in the hypothetical appears to be what actually happened in George, there is a vital difference between the hypothetical and the holding in George. In the hypothetical, the debtor would be entitled to the $10,000.00 exemption with only the first deed of trust encumbering the property, and would still be entitled to the exemption when the judicial lien is also subtracted from the remaining value in the property. As in Duncan, it was the junior non-judicial lien in the hypothetical which impaired the homestead exemption. In George, the judicial lien did create an impairment, as the debtor could not have received the full homestead exemption, absent avoidance under § 522(f), even if there was no junior lien.

9. *See* footnote 4, *supra*.