In re Jeremy S. HAZARD and Marget M.L. Hazard, Debtors.

Jeremy S. HAZARD and Marget M.L. Hazard, Appellants–Debtors,

v.

OVERHEAD DOOR COMPANY OF MADISON, INC., Appellee–Creditor.

No. 89–C–813–C.

United States District Court, W.D. Wisconsin.

April 26, 1990.

Michael E. Kepler, Madison, Wis., for appellants-debtors.

Kenneth J. Doran, Middleton, Wis., for appellee-creditor.

## ORDER

CRABB, Chief Judge.

This is an appeal from an order of the United States Bankruptcy Court for the Western District of Wisconsin denying appellants' motion pursuant to 11 U.S.C. § 522(f)(1) to avoid the judicial lien on their homestead property held by appellee. Section 522(f)(1) allows a debtor to avoid a judicial lien if the lien impairs an exemption to which the debtor would have been entitled but for the lien.

Pursuant to 11 U.S.C. § 522(b)(2), appellants elected to calculate their exemption under Wisconsin law. Wisconsin's homestead exemption statute, Wis.Stat. § 815.20, provides that an owner may exempt the first $40,000 of his homestead from the attachment of judgment liens, but not from mortgages, tax liens and other enumerated security interests. For the reasons that follow, I conclude that appellants are entitled to an exemption of approximately $20,000 and that because the equity in their homestead (that amount of the property value not encumbered by liens) is smaller than the exemption, they

may avoid appellee's judgment lien. Accordingly, the bankruptcy court's decision to deny appellant's motion to avoid appellee's judgment lien will be reversed.

■ In considering an appeal of a bankruptcy court decision, the district court is to review de novo the legal conclusions of the bankruptcy judge. *In re Ebbler Furniture and Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir.1986). Findings of fact made in core proceedings are governed by the clearly erroneous standard. Bankruptcy Rule 8013. Under 28 U.S.C. § 157(b)(2)(B), orders concerning the disposition of exemptible property involve core proceedings. Under the clearly erroneous standard, the reviewing court is required to search the entire record but will reverse the lower court only if it "is left with the definite and firm conviction that a mistake has been committed." *In re Osborne*, 42 B.R. 988, 944 (W.D.Wis.1984), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948).

The bankruptcy court made the following findings of fact, none of which are challenged on appeal.

## FACTS

Appellants Jeremy S. Hazard and Marget M.L. Hazard filed for relief under Chapter 7 of the Bankruptcy Code. Appellants have a homestead interest in a house located at 3031 Cottage Grove Road in Cottage Grove, Wisconsin. The house is worth $90,000 and against it are the following liens which appear to have been docketed properly with the Dane County Register of Deeds:

| Lienholder | Date of Recording | Amount Secured |
| --- | --- | --- |
| Carteret (mortgage) | 2/15/83 | $35,000.00 |
| Overhead (judgment lien) | 6/09/87 | 6,366.99 |
| IRS (tax lien) | 9/08/87 | 34,971.78 |

The appellants claimed a homestead exemption in the property in the amount of $40,000, pursuant to Wis.Stat. § 815.20 and 11 U.S.C. § 522(b)(2).

## OPINION

Pursuant to 11 U.S.C. § 522(f)(1), the appellants moved the bankruptcy court for an order avoiding the judgment lien of Overhead Door Company of Madison, Inc. Appellee Overhead opposed this motion. The bankruptcy court denied appellants' motion and appellants' motion and this appeal followed.

■ 11 U.S.C. § 522(f)(1) provides that a debtor may avoid the fixing of a judicial lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section." 11 U.S.C. § 522(b)(2) allows a debtor to exempt from property of the bankruptcy estate any property that is exempt under federal law or under state law. In this case, appellants elected to have their exempt property rights determined under Wisconsin law. The legislative history of § 522(f)(1) makes clear that the intent behind this provision was to provide the debtor a fresh start by allowing him to avoid certain encumbrances that prevented him from realizing the full amount of his exemption.

> Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property *to the extent that the property could have been exempted in the absence of the lien.*

H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 (1977), *reprinted in* 1978 *U.S.Code Cong. & Ad.News*, 5787, 5963, 6318 (emphasis added). In other words, under § 522(f)(1), a debtor may avoid a judicial lien "only where the debtor would have had an exemptible interest in the property, but for the attachment of a judicial lien or liens." *In re Baldwin*, 84 B.R. 394, 397 (Bkrtcy.W.D.Pa.1988). Therefore, to determine whether appellants should have been allowed to avoid appellee's judicial lien, the following questions must be answered: (1) How much does Wisconsin law permit appellants to exempt?; (2) If appellants are entitled to an exemption, is this exemption impaired (that is, is there sufficient equity in the property to cover this exemption)?; and (3) If there is an impairment, to what

extent is it attributable to appellee's judicial lien?

### A. Exemption

The analysis begins with Wisconsin's Homestead Exemption Statute, Wis.Stat. § 815.20. Unlike its federal counterpart in 11 U.S.C. § 522(d)(1), this provision does not allow a lump sum exemption, but rather reserves the first $40,000 of the property from the operation of judgment liens. This sum is not immunized from the attachment of other security interests such as mortgages and tax liens.

> An exempt homestead ... shall be exempt from execution, from the lien of every judgment ... of such owner to the amount of $40,000, except mortgages, laborers', mechanics' and purchase money liens and taxes as otherwise provided.

Wis.Stat. § 815.20.

The effect of this distinction between exemptible and nonexemptible creditors is the subordination of senior judgment creditors to junior but nonexemptible lienholders upon the sale of the property. This subordination interferes with the usual prioritization scheme in Wisconsin, which generally gives priority to encumbrances on property in the order of their recording. Wis.Stat. § 706.08(1).

The Supreme Court for the State of Wisconsin recognized the exemption statute's mandate to subordinate the security interests of exemptible creditors to those of nonexemptible lienholders in *Lueptow v. Guptill*, 56 Wis.2d 396, 202 N.W.2d 255 (1972). The court had to determine the proper distribution of approximately $5,000 to a judgment lienholder and a junior mortgagee after a foreclosure sale on the homestead. After determining that the owners were entitled to the homestead exemption, the court concluded that the owners could exercise this exemption to preclude the judgment lienholder from payment and to elevate the mortgagee to a priority position. "[T]he [owners] could validly exercise their [$10,000] homestead exemption in the proceeds of a sale of such homestead in order to forward such surplus to their mortgagee." *Id.* at 403, 202 N.W.2d 255.

The judgment creditor argued that this result defeated the purpose of the exemption statute because the owners' exemption was usurped by the mortgagee. In response, the court noted that such an outcome, however irregular, was mandated by "the statute itself," which "expressly excepts mortgagees from the operation of the exemption." *Id.* at 406, 202 N.W.2d 255.

*Lueptow* stands for the proposition that a junior, nonexemptible creditor is not prevented by the homestead exemption from acquiring proceeds that would otherwise be withheld from a senior, exemptible lienholder. However, *Lueptow* does not address the situation in this case in which the value of the homestead exceeds the combined total of the liens against it, but does not exceed the sum of the liens plus the owner's claimed exemption (in this case $40,000).

The Wisconsin supreme court provided guidance for handling such a situation in *Anchor Savings & Loan Association v. Week*, 62 Wis.2d 169, 213 N.W.2d 737 (1974). In that case, a foreclosed homestead was subjected to three encumbrances: a judgment lien, a tax lien, and a mortgage. Without indicating the sequence in which these liens were filed and without stating the amounts due on them, the court explained how the exemptible creditor (the judicial lienholder) was to be treated.

> Once the judgment was entered in this case, finding the homestead exemption as it did, the only rights that could thereafter be asserted by any general judgment creditor would be to *that portion of the surplus which was in excess of the statutory limits of the homestead exemption*. In the instant case, once the foreclosure judgment was entered, the claim of the [judgment creditor] was subordinate to that portion of surplus which was statutorily exempt as homestead *and* subordinate to the tax liens to which the homestead exemption does not apply.

*Id.* at 174, 213 N.W.2d 737 (emphasis added).

From this I conclude that an exemptible creditor (such as a judicial lienholder) may receive proceeds from the foreclosure

sale of a homestead only after the nonexemptible creditors have been paid and the owner has received her exemption. If the nonexemptible creditors have not left an amount greater than the statutory exemption, the exemptible creditors will not be paid.

Therefore, under Wisconsin's homestead exemption statute, the appellant's exemption is $20,028.22. If the homestead were the subject of foreclosure, the nonexemptible creditors, Carteret and the IRS, would take before Overhead, an exemptible creditor, leaving $20,028.22. Because this amount is less than $40,000, Overhead would receive nothing and the exemption remains at $20,028.22.

| | | |
|---|---|---|
| Value of the property: | $90,000.00 | (50,000 surplus and 40,000 exemption reserve) |
| Carteret (mortgage) | 35,000.00 | |
| IRS (tax lien) | 34,971.78 | (depletes $50,000 surplus and cuts into the 40,000 exemption by 19,971.78 leaving 20,028.22) |
| Appellants (exemption) | 20,028.22 | |
| Overhead (judgment lien) | 0.00 | |

### B. Impairment

■ To determine whether there is an impairment of an exemption under 11 U.S.C. § 522(f)(1), it must be ascertained whether there is sufficient equity in the property to cover the exemption. Adding together all the liens levied against the appellants' homestead, the equity remaining is $13,961.23 (90,000 − 76,038.77). Because this amount does not cover the state law exemption of $20,028.22, there is an impairment.

### C. The Effect of the Judicial Lien

Courts are divided over the proper method for determining whether an impairment is caused by the presence of a judicial lien. The conflict revolves around the question whether the priority of the liens should be considered when determining whether an exemption has been impaired. More specifically, the issue is whether a debtor should be allowed to avoid a senior judgment lien when the equity for the homestead exemption is depleted by the attachment of a junior, unavoidable lien.

Three lines of authority have emerged on this issue. One holds that the priority of the liens under state law must be maintained under § 522(f)(1). See, e.g., In re Duncan, 43 B.R. 833, 838 (Bkrtcy.D.Alaska 1984); In re Register, 37 B.R. 708, 712 (Bkrtcy.N.D.Ga.1983). The liens are subtracted from the value of the property in the order of their priority. Those liens that reduce the equity of the property below the homestead level are the ones that impair the exemption. If these liens are judicial, they may be avoided.

Under another line of cases, the result is that a judicial lien may not be avoided when the debtor *voluntarily* subjects his property to a lien after the attachment of a judicial lien such that the junior, but unavoidable lien depletes the equity that otherwise would have covered the homestead exemption. See, e.g., In re Baldwin, 84 B.R. 394, 399 (Bkrtcy.W.D.Pa.1988) ("We therefore interpret the legislative history to show an intent that where a debtor voluntarily subjects his property to the lien of an unavoidable subordinate mortgagee, the debtor's act insulates the prior judgment liens from avoidance for exemption purposes"); In re Fiore, 27 B.R. 48, 50 (Bkrtcy.D.Conn.1983).

■ Under the third approach, the priority of the liens is disregarded. If the total value of the liens held against the property reduces the equity below the exemption level, any judicial liens may be avoided. See, e.g., In re Magosin, 75 B.R. 545, 547

(Bkrtcy.E.D.Pa.1987); *In re Green*, 64 B.R. 462, 464 (Bkrtcy.S.D.Ind.1986) ("[T]his Court ... holds that irrespective of the chronology in which secured debt and judicial liens are incurred, the judicial liens are subject to avoidance under 11 U.S.C. § 522(f) to the extent that such judicial liens impair debtor's exemption"). *Cf. In re Simonson*, 758 F.2d 103, 105 (3d Cir. 1985) (disregard priority of liens but if the unavoidable liens exhaust the equity in the property, the judicial liens are not avoidable because there is no equity that could be applied towards an exemption).

This last method appears to be in greatest conformance with the language and legislative history of § 522(f)(1). As mentioned at the outset, the overriding purpose of this provision is to enhance the fresh start of the debtor by allowing her to exempt certain liens that reduce the amount of an exemption to which she otherwise would be entitled. This purpose would be thwarted at times if the state law priority positions of the liens had to be considered when determining the impairment. Also, nothing in the language of the provision suggests that the priority of the liens must be maintained. Nor is there language indicating that an exception to the usual process for determining an impairment arises when the debtor voluntarily encumbers the property subsequent to the attachment of a judicial lien. *See* 11 U.S.C. § 522(g) (allowing exemptions for transfers of property not made voluntarily).

Rather, the language and legislative history indicate that the bankruptcy estate should be treated in terms of encumbered and unencumbered property for purposes of calculating an exemption. The order in which the encumbrances attached does not appear to be relevant.

> Under proposed [§] 541, all property of the debtor becomes property of the estate, but the debtor is permitted to exempt certain property of the estate under this section. Property may be exempted even if it is subject to a lien, but *only the unencumbered portion* of the property is to be counted in computing the "value" of the property for the purposes of exemption. Thus, for example, a residence worth $30,000 with a mortgage of $25,000 will be exemptable[sic] to the extent of $5,000....

H.R.Rep. No. 95–595, 2nd Sess. 360–361 (1977), *reprinted in* 1978 *U.S.Code Cong. & Admin.News* 5787, 6316–6317 (emphasis added).

It is true that under this approach a debtor may preserve his exemption up to the value of senior judicial liens by voluntarily encumbering his property with a junior mortgage that exhausts the remaining equity in the property. However, this possibility is not such a concern that the court should ignore both the dominant purpose of the provision to enhance the debtor's fresh start and Congress's failure to mention the importance of preserving the state law priority of the liens in the legislative history or the language of the statute itself.

> ... Congress intended to give the debtor a fresh start to the extent a judicial lien impairs an exemption even if it means reordering the priority of creditors. Just because the debtor has the power to affect secured creditors in this way is not sufficient reason to write into the provision a limitation which Congress did not see fit to express.

*In re West*, 68 B.R. 647, 650 (Bkrtcy.C.D. Cal.1986).

■ I conclude that appellee's judicial lien impairs appellants' exemption. The unavoidable liens reduce the equity in the property to $20,028.22 (90,000 − 35,000 − 34,971.78). But for the judicial lien, the exemption of $20,028.22 to which to appellants are appellants are entitled under state law would not be impaired. Because this lien does impair the exemption, appellants may avoid it under 11 U.S.C. § 522(f)(1).

### ORDER

IT IS ORDERED that the bankruptcy court's order of August 11, 1989 denying appellants' motion to avoid appellee's judgment lien is REVERSED.